FILED
HARRISBURG, PA

JUL 2 2 2025

PER_____ CLERK
DEPUTY CLERK

1

**CIVIL Action Complaint**

1. This is an action brought by plaintiff (Imhotep A. Muhammad) seeking compensatory damages, punitive damages, declaratory and injunctive relief against the named Defendants for violations of **42 U.S.C. section 1983,** constitutional rights guaranteed under the laws of the United States and for personnel and other injuries in violation of laws of the state of Pennsylvania.

2. This action is brought by the plaintiffs as a Civil Action, Federal Tort claims on his own behalf. Pursuant to the provisions of Federal Rule of Civil procedure 23 (a), (2), and Federal Rule of Civil Procedure 23(b)(3).

3. This action is properly maintained as a Civil Action and Federal Tort claims in those questions of law and fact common to the members, of the Civil Action 1983 and Federal Tort claims predominate over any questions affecting only individual members, and a 1983 Civil Action and Federal Tort claims, act is superior to other available methods for the fair and efficient or to other available methods for the fair and efficient adjudication of the controversy.

2

## II: *Jurisdiction and Venue*

4. The action is brought pursuant to **42 U.S.C. section 1983, the First, Fifth, and Fourteenth Amendments to the United States Constitution, and Pursuant to 28 U.S.C. section 1331 and 1343 (a) (1) (2) (3) (4), For convicted inmates 8th Amendment.**

5. All the claims arose within the Jurisdiction of this judicial district and involve Defendants who reside within the Jurisdictional Boundaries. Venue is proper under **28 U.S.C. section 1391 (a) (b) (c).**

### *United States District Court*

Middle District of Pennsylvania

Sylvia H. Rambo U.S. Courthouse 1501 North 6th street, suite 101 Harrisburg, Pa 17102

3

## II: *Parties*

6. **Plaintiff;** Imhotep A. Muhammad is a 35-year-old adult African American Male, who was being held at Dauphin County Prison and was release trial and sentencing. Held $25^{1/2}$ months.

7. **Defendant 1;** Chief Deputy Warden Lionel Pierre, second in charge at Dauphin County Prison 501 Mall Road Harrisburg, Pa 17111. This Defendant is being sued in his individual and official capacity.

8. **Defendant 2;** Major Roger Lucas, third in charge at Dauphin County Prison 501 Mall Road Harrisburg, Pa 17111. This Defendant is being sued in his individual and official capacity.

9. **Defendant 3;** Latonya S. Ray, fourth in charge at Dauphin County Prison 501 Mall Road Harrisburg, Pa 17111. This defendant is being sued in her individual and official capacity.

10. **Defendant 4;** Bruce Levalley, fifth in charge at Dauphin County Prison 501 Mall Road Harrisburg, Pa 17111. This Defendant is being sued in his individual and official capacity.

4

11.**Defendant 5;** Dauphin County Prison, Dauphin County Prison 501 Mall Road Harrisburg, Pa 17111. This Defendant is being sued in his individual and official capacity.

12.**Defendant 6**; Scott M. Richmond, a captain at Dauphin County Prison 501 Mall Road Harrisburg, Pa 17111. This Defendant is being sued in his individual and official capacity.

13.**Defendant 7;** Brad Osenga, a captain at Dauphin County Prison 501 Mall Road Harrisburg, Pa 17111. This Defendant is being sued in his individual and official capacity.

14.**Defendant 8;** Emanuel Rose, a high rank lieutenant at Dauphin County Prison 501 Mall Road Harrisburg, Pa 17111. This Defendant is being sued in his individual and official capacity.

15.**Defendant 9;** Robert Battalia, a senior guard at Dauphin County Prison 501 Mall Road Harrisburg, Pa 17111. This Defendant is being sued in his individual and official capacity.

16.**Defendant 10;** Tami Donovan, a senior guard at Dauphin County Prison 501 Mall Road Harrisburg, Pa 17111. This Defendant is being sued in his individual and official capacity.

5

17. **Defendant 11;** William Courtwright, a guard at Dauphin County Prison 501 Mall Road Harrisburg, Pa 17111. This Defendant is being sued in his individual and official capacity.

18. **Defendant 12;** Tyra Riehl, a guard at Dauphin County Prison at Dauphin County Prison 501 Mall Road Harrisburg, Pa 17111. This Defendant is being sued in his individual and official capacity.

19. **Defendant 13;** Thomas Weber, CEO of Prime Care, at Dauphin County Prison 501 Mall Road Harrisburg, Pa 17111. This Defendant is being sued in his individual and official capacity.

20. **Defendant 14;** Dr. Carl Hoffman of Prime Care at 3940 Locust Lane Harrisburg, Pa 17109. This defendant is being sued in his individual and official capacity.

21. **Defendant 15;** Tykeisha Metz Corporate Medical director of Prime care Prime Care at 3940 Locust Lane Harrisburg, Pa 17109. This defendant is being sued in his individual and official capacity.

22. **Defendant 16;** Prime Care, Prime Care at 3940 Locust Lane Harrisburg, Pa 17109. This defendant is being sued in his individual and official capacity.

23. **Defendant 17;** Reyes Yohanna, a guard at Dauphin County Prison at Dauphin County Prison 501 Mall Road Harrisburg, Pa 17111. This Defendant is being sued in his individual and official capacity.

6

24. **Defendant 18;** Collet Robertson, a guard at Dauphin County Prison at Dauphin County Prison 501 Mall Road Harrisburg, Pa 17111. This Defendant is being sued in his individual and official capacity.

25. **Defendant 19;** Nashaya Simmons, a guard at Dauphin County Prison at Dauphin County Prison 501 Mall Road Harrisburg, Pa 17111. This Defendant is being sued in his individual and official capacity.

26. **Defendant 20;** Alfred Sloan, a Pastor at Dauphin County Prison at Dauphin County Prison 501 Mall Road Harrisburg, Pa 17111. This Defendant is being sued in his individual and official capacity.

27. **Defendant 21;** Aaron Ayala, a guard at Dauphin County Prison at Dauphin County Prison 501 Mall Road Harrisburg, Pa 17111. This Defendant is being sued in his individual and official capacity.

28. **Defendant 22;** Sean Carrig, a lieutenant at Dauphin County Prison at Dauphin County Prison 501 Mall Road Harrisburg, Pa 17111. This Defendant is being sued in his individual and official capacity.

29. **Defendant 23;** Chrisandra Brandt, a guard at Dauphin County Prison at Dauphin County Prison 501 Mall Road Harrisburg, Pa 17111. This Defendant is being sued in his individual and official capacity.

7

30. **Defendant 24;** Patrick Elliott, a guard at Dauphin County Prison at Dauphin County Prison 501 Mall Road Harrisburg, Pa 17111. This Defendant is being sued in his individual and official capacity.

31. **Defendant 25;** Dustin Emerich, a guard at Dauphin County Prison at Dauphin County Prison 501 Mall Road Harrisburg, Pa 17111. This Defendant is being sued in his individual and official capacity.

32. **Defendant 26;** Brent Fox, a guard at Dauphin County Prison at Dauphin County Prison 501 Mall Road Harrisburg, Pa 17111. This Defendant is being sued in his individual and official capacity.

33. **Defendant 27;** Keith Mohler, a guard at Dauphin County Prison at Dauphin County Prison 501 Mall Road Harrisburg, Pa 17111. This Defendant is being sued in his individual and official capacity.

34. **Defendant 28;** Yona Pollock, a guard at Dauphin County Prison at Dauphin County Prison 501 Mall Road Harrisburg, Pa 17111. This Defendant is being sued in his individual and official capacity.

35. **Defendant 29;** Andrew Klahr, a Captain at Dauphin County Prison at Dauphin County Prison 501 Mall Road Harrisburg, Pa 17111. This Defendant is being sued in his individual and official capacity.

36. **Defendant 30;** Tyler Hoffman, a guard at Dauphin County Prison at Dauphin County Prison 501 Mall Road Harrisburg, Pa 17111. This Defendant is being sued in his individual and official capacity.

37. **Defendant 31;** James Heckard, a Sergeant at Dauphin County Prison at Dauphin County Prison 501 Mall Road Harrisburg, Pa 17111. This Defendant is being sued in his individual and official capacity.

38. **Defendant 32;** Cynthia Whiting, a guard at Dauphin County Prison at Dauphin County Prison 501 Mall Road Harrisburg, Pa 17111. This Defendant is being sued in his individual and official capacity.

39. **Defendant 33;** Tasia Kea, a guard at Dauphin County Prison at Dauphin County Prison 501 Mall Road Harrisburg, Pa 17111. This Defendant is being sued in his individual and official capacity.

40. **Defendant 34;** Adams Raymond, a lieutenant at Dauphin County Prison at Dauphin County Prison 501 Mall Road Harrisburg, Pa 17111. This Defendant is being sued in his individual and official capacity.

### III: Statement of Facts

41. On December 8, 2022, at approximately 4:45 AM, Plaintiff Imhotep A.

    Muhammad, a 35-year-old male incarcerated at Dauphin County Prison,

    suffered a severe anxiety attack, which caused him to faint and fall to the

    floor, resulting in a chipped front tooth and significant swelling around his

    mouth and face. The cause of this episode stemmed from witnessing his

    cellmate experience a seizure while being unable to seek emergency help due

    to being locked in his cell.

42. When the guard eventually arrived during their rounds, Plaintiff informed him

    about the incident. The guard escorted Plaintiff to the prison's medical facility.

    However, while at the medical unit, the on-duty guard and nurse mocked

    Plaintiff's injuries, laughing at him and making jokes. The nurse merely rinsed

    Plaintiff's injuries with saltwater before sending him back to his block.

43. Upon returning, Plaintiff crossed paths with Lieutenant Manny Rose, who was

    briefed about the incident. Lt. Rose instructed the guard to photograph

    Plaintiff's injuries and subsequently ordered that Plaintiff be placed in the

    "bullpen," a holding area, for further questioning. Lt. Rose interrogated

    Plaintiff for approximately 5-10 minutes, during which he expressed disbelief

    regarding Plaintiff's account of the incident. Lt. Rose insinuated that Plaintiff

10

was lying about the cause of his injuries, dismissing Plaintiff's version as "bullshit" and suggesting that Plaintiff and his cellmate had been fighting.

44. Despite Plaintiff's visible injuries and ongoing head trauma, Lt. Rose continued to interrogate him, and after completing the investigation, left Plaintiff in the bullpen for an additional two hours. Eventually, Lt. Rose confirmed that Plaintiff's story was truthful but ordered that Plaintiff be returned to the same cell with the same cellmate, despite his injuries, including swollen face and ongoing bleeding in his mouth.

45. 45 minutes after being returned to the cell, Plaintiff's cellmate, James Brown, suffered another seizure. Medical staff removed Brown from the cell, but Lt. Rose began spreading false rumors around the prison, claiming that Plaintiff had been fighting with his cellmate.

46. On December 2, 2022, a prison dentist examined Plaintiff's broken teeth and prescribed amoxicillin for 9 days to prevent infection but did not address Plaintiff's ongoing swelling, pain, dizziness, nausea, or concussion symptoms. Plaintiff repeatedly requested to be seen by medical staff but received no proper care.

47. On December 14, 2023, Plaintiff was given Motrin 200 mg but was still not properly treated or evaluated for his head injury. Plaintiff continued to make

medical requests, including numerous grievance forms, but had difficulty

obtaining them from prison staff. It was only on January 6, 2023, that Plaintiff

was able to file multiple grievances against Dauphin County Prison (DCP)

medical staff and Lt. Rose, which led to medical staff finally taking notice of his

injuries. At this point, Plaintiff reported persistent dizziness, vertigo, and other

physical and mental distress.

48. Despite these ongoing issues, including difficulty with concentration, memory

loss, and emotional distress, Plaintiff continued to face neglect and delays in

care. Medical staff informed him that he might suffer permanent vertigo due

to the fall, which he continues to experience. Additionally, Plaintiff underwent

an x-ray of his skull, which PrimeCare Medical staff claimed showed no

fractures, but Plaintiff has not been provided with the x-ray results.

49. Plaintiff asserts that this incident could have been prevented if his cellmate,

who had a history of seizures, had been placed in a proper medical facility or

an area under constant supervision by medical and prison staff. Instead,

Plaintiff was forced to endure a traumatic experience that resulted in both

physical and mental injuries. To this day, Plaintiff suffers from depression,

PTSD, memory loss, cognitive impairment, nightmares, paranoia, anxiety,

mood swings, and other mental and emotional distress. He has been

12

prescribed over 30 different medications to manage pain and mental health issues arising from this incident.

50. Dauphin County Prison and PrimeCare Medical's ongoing failure to provide appropriate medical care has exacerbated Plaintiff's physical and psychological suffering, resulting in further damage and continued distress.

### IV: Impact of Injuries and Conditions on Imhotep

51. The injuries and conditions Plaintiff Imhotep A. Muhammad has endured at Dauphin County Prison (DCP) have significantly affected his physical, emotional, and mental well-being. The nature of these injuries, combined with the harsh prison environment, has resulted in lasting effects. While some of these impacts may vary from inmate to inmate, the conditions at DCP have caused harm to many individuals, including Plaintiff, and have the potential to cause even more severe damage.

Plaintiff's ongoing struggles include:

- **Severe Anxiety and PTSD**: The trauma from the incident, coupled with the oppressive prison conditions, has led to heightened anxiety, panic attacks, and PTSD. These mental health issues continue to interfere with Plaintiff's daily life and stability.

- **Memory Loss and Cognitive Impairment:** The head injury Plaintiff sustained from the fall, combined with the lack of proper medical care, has led to memory loss, difficulty concentrating, and a decrease in cognitive functions, impairing his ability to think clearly or remember important events.

- **Headaches and Dizziness:** Persistent headaches and dizziness, often linked to the concussion sustained from the fall, have been ongoing since the incident. Plaintiff also suffers from vertigo, a condition that may be permanent, making simple tasks difficult and disorienting.

- **Physical Pain and Fatigue:** Plaintiff experiences constant physical pain, particularly from the injury to his teeth, ongoing swelling, and severe discomfort from his head injury. The physical toll has been compounded by the harsh conditions at DCP, including inadequate sleep due to uncomfortable bunk beds that restrict blood flow and cause numbness in the arms of those who sleep on them. These conditions, along with insufficient nutrition and medical care, have led to chronic fatigue, further exacerbating the physical and emotional toll.

- **Mental and Emotional Distress:** Plaintiff's ongoing mental anguish includes depression, mood swings, nightmares, paranoia, and emotional fatigue. The

14

lack of adequate care and the constant exposure to stressful, harsh conditions have contributed to a feeling of despair and hopelessness. These conditions have negatively impacted Plaintiff's mental health, creating a cycle of emotional and physical deterioration.

- **Decreased Physical Health**: DCP's poor living conditions, including exposure to secondhand smoke, inadequate sanitation, and insufficient fresh air and sunlight, have caused Plaintiff to experience deteriorating physical health. He has suffered from skin rashes, fungal growth, stomach pain, and constipation. Additionally, the poor diet at DCP, which has led to digestive issues such as blood in his stool and excessive gas, has worsened his condition. Plaintiff has also been exposed to contaminated drinking water, which has resulted in nausea, vomiting, and further health complications.

- **Compromised Organ Function**: The conditions at DCP, including inadequate medical care and poor living environments, have resulted in fluctuating liver and kidney function. Plaintiff has experienced pain around his heart, possibly due to stress and poor physical health, further complicating his overall condition.

15

- **Nutritional Deficiencies**: Plaintiff's body has been deprived of essential nutrients, such as Vitamin D, due to lack of sunlight and insufficient food. This has led to deteriorating skin health and other related complications.

52. While Plaintiff's experience may be a more extreme case, it is essential to recognize that these issues affect many inmates at DCP, with some suffering from more severe conditions or damage, while others may experience fewer or less severe effects. Regardless of the severity, no one should be subjected to such harmful and inhumane conditions. These injuries and conditions, coupled with the lack of adequate care, have caused significant emotional, physical, and mental harm, impacting Plaintiff's overall quality of life and well-being.

### V: Conditions at Dauphin County Prison

53. The conditions at Dauphin County Prison (DCP) are characterized by numerous deficiencies and failings that have created a dangerous, unsanitary, and oppressive environment for inmates, including Plaintiff Imhotep A. Muhammad. These conditions are harmful to the physical and mental well-being of the inmates, further exacerbating their suffering while incarcerated. Some of the most notable issues include:

1. **Prolonged Isolation and Inadequate Recreation:** Inmates are subjected to long periods of isolation, with schedules that lock them in their cells for 22-23 hours per day. This "22 & 2" or "23 & 1" routine, which limits inmates to a mere 45 minutes of indoor recreation, falls far below the requirements set forth by Title 37, which mandates at least two hours of recreation. This deprivation of meaningful social interaction and exercise has a devastating impact on the mental health and overall well-being of inmates.

2. **Unhygienic and Unsafe Living Conditions:** The prison is infested with harmful substances, including dust, black mold, spider webs, and fungal growth on the floors, walls, windowsills, showers, and within the ventilation system. These issues pose a severe health risk, as inmates are forced to breathe polluted air and live in an unsanitary environment. The water is frequently contaminated, coming out brown or yellow with a strong odor of human waste, making it unsafe for consumption or hygiene purposes.

3. **Inadequate and Unsanitary Food:** The meals provided to inmates are substandard and sometimes inedible, often consisting of moldy bread, uncooked meats, and poorly prepared or undercooked vegetables, cakes, and cornbread. The food is often served in cells near the toilets, further

adding to the unsanitary conditions. The portions are insufficient,

contributing to poor nutrition and the physical deterioration of inmates.

4. **Unsafe and Decrepit Facilities**: The prison is equipped with old, rusty bunk

beds and worn-down mattresses that are uncomfortable and potentially

harmful to inmates' physical health. The conditions also include issues of

systemic racism and inadequate religious services, which create a hostile

environment for inmates of various racial and religious backgrounds.

Inmates are subjected to physical abuse, harassment, threats, and even

killings at the hands of other inmates or prison guards.

5. **Faulty Grievance System**: The grievance procedure at DCP is broken,

confusing, and biased. The process is designed to deceive and mislead

inmates, discouraging them from filing legitimate complaints. Grievance

forms are difficult to obtain, and the staff handling these grievances are

often biased, dismissing complaints or providing misleading information.

This makes it difficult for inmates to seek redress for the mistreatment they

endure.

6. **Pest Infestation**: DCP is plagued by a serious pest infestation, including

mice, cockroaches, silverfish, spiders, and water bugs. These pests further

contribute to the unsanitary and unhealthy living conditions, exposing inmates to potential diseases and exacerbating their suffering.

7. **Inadequate Medical and Dental Care**: The prison's medical and dental care facilities are inadequate, with insufficient attention given to the health and well-being of inmates. Emergency means of contact with medical staff are insufficient, and requests for care are often ignored or delayed. This lack of timely medical attention, coupled with poor maintenance of health-related resources, places inmates' physical health at significant risk.

8. **Inadequate Communication and Maintenance**: The phone system at DCP is unreliable, making it difficult for inmates to maintain communication with their families and legal representatives. Additionally, the overall maintenance of the prison is subpar, with ongoing issues that are either ignored or inadequately addressed by the staff, contributing to the unsafe and deteriorating conditions of the facility.

54. In summary, the conditions at Dauphin County Prison represent a serious violation of the rights and well-being of inmates. The unsanitary, oppressive, and unsafe environment in which inmates are forced to live causes significant harm to their physical and mental health. These conditions, combined with inadequate medical care, inadequate recreation, and systemic abuse, create

an environment that is far from conducive to rehabilitation or humane treatment.

## Count 1: Claim for Violation of Constitutional Rights Due to Inadequate Ventilation at Dauphin County Prison (DCP)

55. Plaintiff, **Imhotep Muhammad**, brings this claim against Defendants **Lionel Pierre, Major Roger Lucas, Latonya S. Ray, Bruce Levalley, Scott M. Richmond, Brad Osenga, Emanuel Rose, Keith Mohler, Adams Raymond, James Heckard,** and the entire Captain and Lieutenant division at **Dauphin County Prison (DCP)**, based on unconstitutional conditions of confinement that violate the **Fifth, Eighth,** and **Fourteenth Amendments** of the United States Constitution.

**1. Defendants' Failure to Address Hazardous and Unsanitary Ventilation:**

56. The vents in Plaintiff's housing unit are covered with dust and black mold, which pose a serious health risk to inmates, including Plaintiff. Defendants have willfully and deliberately allowed the sanitation of these vents to deteriorate, resulting in a direct threat to the health and well-being of inmates. This constitutes a violation of Plaintiff's right to be free from cruel and unusual punishment under the **Eighth Amendment** and a denial of due process and equal protection under the **Fifth** and **Fourteenth Amendments**.

**2. Environmental Health Hazards:**

57. Plaintiff has been exposed to hazardous fumes emanating from human waste, dead pests, and bodily odors from other inmates. As a result, Plaintiff has suffered from nosebleeds, sinus headaches, and nausea. Defendants' failure to remedy these conditions, despite knowledge of their existence, demonstrates deliberate indifference to Plaintiff's health and well-being, in violation of the **Eighth Amendment**.

**3. Mold and Fungal Growth in Plaintiff's Cell:**

58. The air in Plaintiff's cell is stagnant and humid, particularly near the showers, creating an environment conducive to fungal growth. The floor and walls of the shower area are covered with black mold, which has led to fungal growth on Plaintiff's back, as documented on two separate occasions—once in March 2024 and again on July 19, 2024. Defendants' failure to address these conditions constitutes a violation of Plaintiff's right to a safe and healthy living environment.

**4. Failure to Remedy Known Health Hazards:**

59. Defendants, through their deliberate indifference to the conditions of confinement, have failed to address these known hazardous conditions, despite

Plaintiff's complaints. This failure constitutes deliberate indifference to Plaintiff's

health and safety, violating Plaintiff's **Eighth** and **Fourteenth Amendment** rights.

The continued exposure to these dangerous conditions has resulted in ongoing

physical, emotional, and mental suffering.

**5. Long-Term Health Consequences of Black Mold Exposure:**

60. Plaintiff's exposure to black mold, particularly the mycotoxins produced by

**Stachybotrys chartarum**, has caused potential kidney damage, as well as other

long-term health risks. Research, including studies published in the **Journal of**

**Renal Toxicology (2020)** and **Toxicology Reports (2019)**, demonstrates that

chronic exposure to mycotoxins can cause oxidative stress, kidney cell damage,

and impaired renal function. Defendants' failure to remediate these hazardous

conditions has placed Plaintiff at an unacceptable risk of serious and lasting health

consequences.

**6. Violations of Constitutional Rights:**

61. Defendants' actions and omissions constitute deliberate indifference to

Plaintiff's health and safety, violating Plaintiff's rights under the **Fifth, Eighth,** and

**Fourteenth Amendments.** The failure to provide a reasonably safe and sanitary

living environment has resulted in ongoing emotional, mental, and physical harm

to Plaintiff for the past 25 ½ months. Defendants' actions are not only

unconstitutional but also unlawful, as they directly undermine the basic rights of

an incarcerated individual to be free from conditions that pose a substantial risk

of harm.


**Why Plaintiff is Entitled to Relief:**

62. Plaintiff is entitled to relief because the Defendants' actions and omissions

violate Plaintiff's constitutional rights under the **Fifth, Eighth**, and **Fourteenth

Amendments**. The persistent exposure to hazardous and unsanitary conditions,

including mold, contaminated air, and unsafe living environments, has caused

Plaintiff substantial physical harm, mental anguish, and emotional suffering.

63. These conditions violate the constitutional protections against cruel and

unusual punishment, deprivation of due process, and equal protection under the

law. Additionally, Defendants' deliberate indifference to the known hazards and

failure to take corrective action further demonstrate their violation of Plaintiff's

rights. As a result of these ongoing violations, Plaintiff seeks relief including

compensatory damages for physical injuries, emotional distress, and pain and

suffering, as well as punitive damages due to the Defendants' willful, malicious, and grossly negligent conduct. Furthermore, Plaintiff seeks injunctive relief to address and remedy the unsanitary conditions and prevent future harm.

### Count 2: Violation of 42 U.S.C. § 1983 – Pest Infestation

### (Fifth, Eighth, and Fourteenth Amendments)

64. Plaintiff, **Imhotep Muhammad**, brings this claim under **42 U.S.C. § 1983** against Defendants **Lionel Pierre, Major Roger Lucas, Latonya S. Ray, Bruce Levalley, Scott M. Richmond, Brad Osenga, Emanuel Rose, Keith Mohler, Adams Raymond, James Heckard**, and the entire Captain and Lieutenant division at **Dauphin County Prison (DCP)**, based on the unconstitutional conditions of confinement related to a serious pest infestation that Plaintiff has been subjected to over the course of his 25 ½ months at DCP.

### 1. Pest Infestation at Dauphin County Prison:

65. Plaintiff has been exposed to a variety of pests within DCP, including mice, large cockroaches, water bugs, spiders, and silverfish. These pests infest Plaintiff's cell, bedding, and the prison block in general, creating an unsanitary and unsafe environment. Mice have been observed running inside Plaintiff's cell, leaving

droppings on the floor and Plaintiff's bed covers. The presence of these rodents in the trash and throughout the cell poses a serious health risk, as mice carry diseases and bacteria that can cause harm to inmates.

**2. Specific Pests and Associated Health Risks:**

- **Mice**: Mice have been found inside Plaintiff's cell, leaving droppings on the floor and bedding. Mice are known carriers of diseases that pose serious health risks to inmates.

- **Cockroaches**: Large flying cockroaches have been found in and around Plaintiff's cell. The presence of these aggressive pests creates an unhygienic and frightening environment.

- **Water Bugs**: Water bugs are found near Plaintiff's toilet and shower area, further exacerbating the unsanitary conditions.

- **Spiders**: Spiders are present on the walls and windowsills of Plaintiff's cell.

- **Silverfish**: Small silverfish insects have been found on Plaintiff's cell floor and around the bunkbed, presenting potential dangers, such as crawling into inmates' ears and causing harm.

66. These conditions are well-documented in case law, including **Gaston v. Coughlin**, 249 F.3d 156 (2d Cir. 2001) and **Gates v. Cook**, 376 F.3d 323 (5th Cir.

25

2004), which recognize that such infestations and unsanitary conditions can violate the **Eighth Amendment** protections against cruel and unusual punishment.

**3. Defendants' Deliberate Indifference and Failure to Act:**

67. Defendants have been aware of the pest infestation at DCP but have failed to adequately address the issue. Pest control was only sporadically applied—twice during Plaintiff's 25 ½ months of incarceration, with a 9 to 11-month gap between treatments. Despite Plaintiff filing a grievance regarding the infestation, Defendants did not take adequate action to eliminate the pests or prevent further infestation.

68. Defendants intentionally, willfully, maliciously, and recklessly allowed these pests to infest the prison, demonstrating deliberate indifference to Plaintiff's health and safety. The persistent failure to address the pest issue constitutes a violation of Plaintiff's rights under the **Fifth**, **Eighth**, and **Fourteenth Amendments**.

**4. Violations of Plaintiff's Constitutional Rights:**

69. The conditions Plaintiff has endured, including the pest infestation and unsanitary environment, violate his **Eighth Amendment** right to be free from

cruel and unusual punishment, as well as his **Fifth** and **Fourteenth Amendments** rights to due process and equal protection under the law. Plaintiff has been deprived of a basic necessity—sanitation and protection from health hazards—by the practice, policy, and customs at DCP, causing Plaintiff significant suffering for 25 ½ months, including emotional, mental, and physical pain.

## 5. Plaintiff's Right to Relief:

70. Plaintiff is entitled to relief due to Defendants' deliberate indifference to the serious pest infestation and its detrimental impact on Plaintiff's health. The continued exposure to rodents, insects, and unsanitary conditions has caused Plaintiff both physical harm and emotional distress. Defendants' failure to address the known hazards demonstrates a callous disregard for Plaintiff's constitutional rights. As a result, Plaintiff seeks compensatory damages for the physical and emotional harm caused by the infestation, punitive damages for Defendants' reckless conduct, and injunctive relief to address and remediate the conditions at DCP to prevent future harm.

27

## Why Plaintiff is Entitled to Relief:

71. Plaintiff is entitled to relief because the Defendants' actions and omissions have resulted in a violation of Plaintiff's constitutional rights under the **Fifth, Eighth,** and **Fourteenth Amendments**. The serious and ongoing pest infestation at DCP, which was not adequately addressed despite Plaintiff's complaints, constitutes cruel and unusual punishment and denial of basic necessities, causing physical harm and emotional suffering. Plaintiff seeks compensatory damages for these injuries, punitive damages due to the Defendants' callous indifference, and injunctive relief to prevent future harm. Defendants' failure to take corrective action after being made aware of the infestation further reinforces the claim of deliberate indifference to Plaintiff's health and safety

## Count 3: Violation of 42 U.S.C. § 1983 – Prolonged Isolation (22 or 23 Hours of Cell Confinement)

### (Fifth, Eighth, and Fourteenth Amendments)

72. Plaintiff, **Imhotep Muhammad**, brings this claim under **42 U.S.C. § 1983** against Defendants **Chief Deputy Warden Lionel Pierre, Major Roger Lucas, Latonya S. Ray, Bruce Levalley, Scott M. Richmond, Brad Osenga, Emanuel Rose,**

Robert Battalia, Tami Donovan, William Courtwright, Tyra Riehl, Reyes Yohanna, Collet Robertson, Nashaya Simmons, Aaron Ayala, Sean Carrig, Chrisandra Brandt, Patrick Elliott, Dustin Emerich, Brent Fox, Keith Mohler, Yona Pollock, Andrew Klahr, Tyler Hoffman, James Heckard, Cynthia Whiting, Tasia Kea, Adams Raymond, and the entire Captain and Lieutenant division at Dauphin County Prison (DCP), based on the unconstitutional practice, policy, and custom of subjecting Plaintiff to prolonged isolation in his cell for 22 to 23 hours per day for extended periods, violating his constitutional rights.

**1. Prolonged Isolation and Deprivation of Out-of-Cell Time:**

73. In **2022** and **2023**, DCP officials subjected Plaintiff to extended periods of isolation, limiting his out-of-cell time to only **1 hour per day, 3 to 5 times per month**, and in some cases, no out-of-cell time for days at a time. For the majority of these months, Plaintiff was confined to his cell for **22 to 23 hours** each day, with only **10 to 15 minutes for showers**. This prolonged isolation, combined with unsanitary conditions such as exposure to pests, dust, and lack of proper ventilation, caused significant physical and mental harm to Plaintiff.

**2. Violations of Constitutional Rights:**

29

74. This practice, policy, and custom by DCP officials violates Plaintiff's rights under the **Fifth, Eighth,** and **Fourteenth Amendments**. Prolonged isolation, especially without adequate out-of-cell time or meaningful activities, constitutes cruel and unusual punishment in violation of the **Eighth Amendment**, which prohibits the infliction of suffering due to inhumane conditions. The **Fifth** and **Fourteenth Amendments** are also implicated as Plaintiff has been deprived of basic necessities of life, such as adequate time outside his cell, recreational opportunities, and mental stimulation, without due process or equal protection.

**3. Deterioration of Mental and Physical Health:**

75. The practice of prolonged confinement in a small, poorly ventilated cell with minimal access to out-of-cell activities has severely damaged Plaintiff's mental and physical well-being. Sitting for long periods in a confined space with white-painted walls, exposure to dust, pests, and inadequate sanitation, and lack of fresh air has caused extreme emotional and psychological distress. These conditions have led to the deterioration of Plaintiff's mental health and physical suffering, including symptoms of anxiety, depression, and other mental health issues.

**4. Defendants' Willful and Reckless Conduct:**

30

76. Defendants have been aware of the unconstitutional conditions at DCP but have failed to take adequate action to remedy the situation. The practice of prolonged isolation continued for **25 ½ months**, despite Plaintiff's repeated complaints, petitions, and grievances. In **August 2023**, Plaintiff submitted a petition for increased out-of-cell time, which led to a temporary increase to **2 hours per day**, but the conditions quickly returned to **1 hour per day**, and the out-of-cell time fluctuated throughout **2024**, from **10 to 15 minutes to 2 hours per day**. This inconsistency and failure to address the core issue of prolonged isolation is evidence of Defendants' deliberate indifference and callous disregard for Plaintiff's rights.

**5. Violations of Title 37 and Title 42 Regulations:**

77. Plaintiff's conditions also violate the applicable provisions of **Title 37** of the Pennsylvania Code, which mandates a minimum amount of out-of-cell time for inmates. The practice at DCP of routinely confining Plaintiff to his cell for 22 to 23 hours a day is in direct violation of these regulations and the constitutional protections afforded to Plaintiff under the **Fifth, Eighth,** and **Fourteenth Amendments**.

**6. Plaintiff's Right to Relief:**

78. Plaintiff is entitled to relief due to the unconstitutional conditions of prolonged isolation and deprivation of out-of-cell time. The failure of Defendants to provide Plaintiff with the required out-of-cell time, combined with the other inhumane conditions of confinement, constitutes a violation of Plaintiff's constitutional rights. Plaintiff seeks compensatory damages for the emotional, mental, and physical harm suffered as a result of these conditions, punitive damages due to Defendants' deliberate indifference and reckless conduct, and injunctive relief to ensure that such conditions are remedied and future violations are prevented.

**Why Plaintiff is Entitled to Relief:**

79. Plaintiff is entitled to relief because the prolonged isolation and deprivation of adequate out-of-cell time subjected him to cruel and unusual punishment in violation of his **Eighth Amendment** rights. Additionally, the failure to provide Plaintiff with the basic necessities required for mental and physical health constitutes a violation of his **Fifth** and **Fourteenth Amendment** rights. The callous disregard by Defendants for Plaintiff's well-being, despite repeated complaints and grievances, demonstrates deliberate indifference. As a result, Plaintiff seeks

compensatory and punitive damages for the harm caused and injunctive relief to address the unconstitutional conditions at DCP.

## Count 4: Violation of 42 U.S.C. § 1983

## Deprivation of Outdoor Recreation

## Fifth, Eighth, and Fourteenth Amendments

80. Plaintiff, Imhotep Muhammad, brings this claim under 42 U.S.C. § 1983, alleging that Defendants violated his rights under the Fifth, Eighth, and Fourteenth Amendments by depriving him of outdoor recreation and fresh air for over 25 months during his confinement at Dauphin County Prison (DCP).

*Factual Allegations*

1. **Systematic Denial of Outdoor Recreation**:

   a. Since Plaintiff's incarceration at DCP, he has been denied any meaningful opportunity for outdoor recreation or exposure to fresh air. The sole exception occurred on September 2, 2024, when Plaintiff was allowed 45 minutes of outdoor time due to the Labor Day holiday. Immediately thereafter, Defendants reverted to their standard practice, policy, and custom of denying outdoor recreation.

33

2. **Severe Physical and Psychological Harm**:

   a. The deprivation of outdoor recreation has caused Plaintiff substantial

      harm:

      i. **Physical Harm**: Plaintiff has suffered from severe deficiencies

         in Vitamin D and Vitamin D3, resulting in compromised

         physical health.

      ii. **Psychological Harm**: The absence of sunlight, fresh air, and

         outdoor exercise has inflicted lasting damage on Plaintiff's

         mental and emotional wellbeing, including heightened stress,

         anxiety, and feelings of isolation.

3. **Public Misrepresentation**:

   a. Defendants intentionally misled the public by falsely claiming,

      through local media, that inmates at DCP are afforded two hours of

      outdoor recreation daily. In reality, inmates, including Plaintiff, rarely

      receive even 45 minutes of indoor recreation, and outdoor

      recreation has been effectively nonexistent.

4. **Relevant Case Law Supporting Plaintiff's Claim**:

   a. Courts have consistently held that prolonged denial of outdoor

      recreation constitutes a violation of constitutional rights:

      i.  *Toussaint v. Yockey*, 722 F.2d 1490 (requiring outdoor exercise through a preliminary injunction).

     ii.  *Allen v. Sakai*, 48 F.3d 1082 (denial of outdoor exercise violates the Eighth Amendment, and no qualified immunity applies).

5. **Intentional and Malicious Conduct**:

    a.  Defendants, through their deliberate acts and omissions, have willfully, maliciously, and recklessly enforced policies and practices with callous disregard for Plaintiff's basic human needs. This conduct demonstrates deliberate indifference to Plaintiff's constitutional rights and well-being.

### *Explanation of Why Plaintiff Is Entitled to Relief*

81. The prolonged deprivation of outdoor recreation constitutes cruel and unusual punishment under the Eighth Amendment, as it denies Plaintiff the basic human necessity of fresh air and sunlight, which are essential to physical and mental health. Further, the deliberate indifference of Defendants to Plaintiff's basic needs violates the Due Process Clause of the Fourteenth Amendment and Plaintiff's substantive rights under the Fifth Amendment.

35

82. Courts have held that outdoor exercise is a fundamental component of humane conditions of confinement. In *Allen v. Sakai*, 48 F.3d 1082, the court ruled that the absence of outdoor exercise constitutes an unnecessary and wanton infliction of pain, which is impermissible under the Eighth Amendment. Similarly, in *Toussaint v. Yockey*, 722 F.2d 1490, courts mandated outdoor recreation as an essential aspect of confinement, recognizing the physical and psychological harm caused by its absence.

83. Defendants' deliberate and continued enforcement of this practice, policy, and custom—despite the known harm it causes—demonstrates their callous disregard for Plaintiff's constitutional rights. As a result of these actions, Plaintiff has endured significant physical and psychological harm, warranting compensatory and punitive damages and injunctive relief to prevent further violations.

### Defendants

84. The following individuals and entities are responsible for implementing and enforcing this unconstitutional practice:

- **Defendants**: Lionel Pierre, Major Roger Lucas, Latonya S. Ray, Bruce Levalley, Scott M. Richmond, Brad Osenga, Emanuel Rose, Robert Battalia, Tami Donovan, William Courtwright, Tyra Riehl, Reyes Yohanna, Collet Robertson, Nashaya Simmons, Aaron Ayala, Sean Carrig, Chrisandra Brandt, Patrick Elliott, Dustin Emerich, Brent Fox, Keith Mohler, Yona Pollock, Andrew Klahr, Tyler Hoffman, James Heckard, Cynthia Whiting, Tasia Kea, Adams Raymond.

85. These Defendants, have either directly enforced or allowed the continuation of these unconstitutional practices, policies, and customs.

### *Relief Sought*

As a direct and proximate result of Defendants' actions and omissions, Plaintiff respectfully requests the following relief:

1. **Compensatory Damages**: To redress Plaintiff's physical, emotional, and psychological suffering.

2. **Punitive Damages**: To punish Defendants for their malicious and deliberate disregard of Plaintiff's constitutional rights and to deter future violations.

37

3. **Injunctive Relief:**

    a. To immediately cease the enforcement of the practice, policy, and custom of depriving inmates of outdoor recreation.

    b. To implement constitutionally compliant outdoor recreation policies ensuring meaningful opportunities for fresh air and exercise.

4. **Reasonable Attorney Fees and Costs:** Pursuant to 42 U.S.C. § 1988.

86. Plaintiff asserts that the aforementioned actions and omissions by Defendants constitute a violation of his constitutional rights and entitle him to the relief sought.

## Count 5: Violation of 42 U.S.C. § 1983

### Unsanitary Conditions

### Fifth, Eighth, and Fourteenth Amendments

87. Plaintiff, Imhotep Muhammad, brings this claim under 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights under the Fifth, Eighth, and Fourteenth Amendments by subjecting him to unsanitary and hazardous living conditions during his confinement at Dauphin County Prison (DCP).

***Factual Allegations***

1. **Unclean and Unsanitary Conditions**:

   a. Plaintiff has been confined in an environment filled with:

      i. **Black Mold**: Widespread mold infestation in the vents, showers, walls, and ceilings, which Defendants only paint over without proper remediation.

      ii. **Heavy Dust**: Accumulated dust covers walls, floors, ceilings, and other surfaces throughout the facility, including Plaintiff's cell and the tiers.

      iii. **Fungal Growth**: Showers harbor visible fungal growth, and Plaintiff developed fungal growth on his back as a direct result of exposure to these conditions.

      iv. **Vermin and Vermin Droppings**: Vermin infestation is rampant, with mice droppings found throughout the facility, including Plaintiff's cell, and carcasses of vermin left unattended.

      v. **Spider Webs**: Found on windowsills and ceilings.

2. **Health Impacts**:

a. The unsanitary conditions have caused significant harm to Plaintiff, including:

    i. **Potential Kidney Damage**: Prolonged exposure to black mold and its associated mycotoxins (e.g., *Stachybotrys chartarum*) has likely caused damage to Plaintiff's kidneys.

    ii. **Fungal Infections**: Direct exposure to fungal growth in showers has led to the development of fungal growth on Plaintiff's back.

b. Medical research supports the harmful effects of these conditions:

    i. A 2019 study in *Toxicology Reports* confirmed that chronic exposure to mycotoxins causes oxidative stress and renal impairment.

    ii. The *Journal of Renal Toxicology* (2020) found that airborne mycotoxins accumulate in kidneys, causing structural and functional damage over time.

3. **Deliberate Indifference by Defendants**:

a. Despite Plaintiff's repeated complaints about the conditions, Defendants willfully, maliciously, and recklessly failed to take corrective action.

b.  Defendants have promoted, enforced, and allowed these unsanitary conditions to persist as a standard practice, policy, and custom at DCP, demonstrating deliberate indifference to Plaintiff's constitutional rights.

4.  **Relevant Case Law Supporting Plaintiff's Claim:**

a.  *Ramos v. Lamm*, 639 F.2d 559 (10th Cir. 1980): Held that inmates are entitled to sanitary living conditions, and the denial of such conditions violates the Eighth Amendment.

b.  *Helling v. McKinney*, 509 U.S. 25 (1993): Recognized that environmental conditions posing an unreasonable risk to an inmate's health violate the Eighth Amendment.

***Explanation of Why Plaintiff Is Entitled to Relief***

87. The conditions described above constitute cruel and unusual punishment under the Eighth Amendment by depriving Plaintiff of the basic human necessity of a sanitary living environment. Prolonged exposure to black mold, vermin, and fungal growth has caused Plaintiff significant physical, emotional, and mental harm. Defendants' deliberate failure to remedy these conditions, despite knowing

41

the substantial risk to Plaintiff's health and safety, violates the Eighth and Fourteenth Amendments.

88. Courts have consistently held that unsanitary conditions, including exposure to black mold and vermin, constitute deliberate indifference when prison officials knowingly allow such conditions to persist. In *Ramos v. Lamm*, the court emphasized that inmates are entitled to living conditions that meet minimal standards of health and safety. Similarly, in *Helling v. McKinney*, the Supreme Court ruled that prison officials may not expose inmates to conditions that pose an unreasonable risk to future health.

89. Defendants' conduct also violates Plaintiff's substantive rights under the Fifth and Fourteenth Amendments, as the conditions shock the conscience and fail to provide the basic decencies required for humane treatment.

### *Defendants*

      i.  The following individuals and entities are responsible for implementing and enforcing these unconstitutional practices, policies, and customs: **Defendants**: Lionel Pierre, Major Roger Lucas, Latonya S. Ray, Bruce Levalley, Scott M. Richmond, Brad

Osenga, Emanuel Rose, Robert Battalia, Tami Donovan,
William Courtwright, Tyra Riehl, Reyes Yohanna, Collet
Robertson, Nashaya Simmons, Aaron Ayala, Sean Carrig,
Chrisandra Brandt, Patrick Elliott, Dustin Emerich, Brent Fox,
Keith Mohler, Yona Pollock, Andrew Klahr, Tyler Hoffman,
James Heckard, Cynthia Whiting, Tasia Kea, Adams Raymond.

### *Relief Sought*

90. As a direct and proximate result of Defendants' actions and omissions, Plaintiff respectfully requests the following relief:

1. **Compensatory Damages**: For Plaintiff's physical, emotional, and psychological suffering.

2. **Punitive Damages**: To punish Defendants for their malicious and deliberate indifference and deter future violations.

3. **Injunctive Relief:**

   a. To immediately cease the practice, policy, and custom of maintaining unsanitary conditions at DCP.

43

    b. To implement a comprehensive sanitation plan, including regular cleaning and remediation of black mold, vermin infestations, and fungal growth.

4. **Reasonable Attorney Fees and Costs**: Pursuant to 42 U.S.C. § 1988.

91. Plaintiff asserts that the aforementioned actions and omissions by Defendants constitute a violation of his constitutional rights and entitle him to the relief sought.

**Count 6: Violation of 42 U.S.C. § 1983**

**Polluted Water (Yellowish/Brown Drinking Water)**

**Fifth, Eighth, and Fourteenth Amendments**

92. Plaintiff, Imhotep Muhammad, alleges that Defendants violated his constitutional rights under the Fifth, Eighth, and Fourteenth Amendments by subjecting him to polluted and unsafe drinking water at Dauphin County Prison (DCP).

*Factual Allegations*

    1. **Polluted and Unsafe Drinking Water:**

a. The water at DCP frequently comes out of the sink with a yellowish or brown color and emits an odor resembling human waste. These conditions have persisted since Plaintiff's initial incarceration at DCP.

b. Despite these conditions, Defendants have failed to provide clean drinking water, such as bottled water, to inmates during these occurrences.

c. DCP staff members bring their own bottled water to drink, indicating their awareness of the unsafe water conditions.

2. **Adverse Health Effects**:

a. On December 23, 2022, at approximately 4:30 AM, Plaintiff consumed the polluted water and fell gravely ill, experiencing:

   i. Severe stomach pain

   ii. Fever

   iii. Vomiting

   iv. Diarrhea

   v. Back pain

   vi. Dizziness

   vii. Nausea

   viii. Chills and body aches

    ix.  Loss of appetite

  b.  On May 15 and 16, 2024, the water was visibly yellow, causing many inmates, including Plaintiff, to fall ill once again.

3. **Deliberate Indifference**:

  a.  Defendants knowingly allowed inmates, including Plaintiff, to consume contaminated water, ignoring the substantial risk to their health and safety.

  b.  Defendants failed to remedy the issue or provide alternative sources of clean drinking water, demonstrating a deliberate indifference to Plaintiff's basic human needs and constitutional rights.

4. **Relevant Case Law Supporting Plaintiff's Claim**:

  a.  *Jackson v. Duckworth*, 955 F.2d 21 (7th Cir. 1992): Held that inmates are entitled to basic necessities, including sanitary drinking water, under the Eighth Amendment.

  b.  *Keenan v. Hall*, 83 F.3d 1083 (9th Cir. 1996): Recognized that the denial of clean drinking water constitutes a violation of the Eighth Amendment's prohibition against cruel and unusual punishment.

c. *Ramos v. Lamm*, 639 F.2d 559 (10th Cir. 1980): Affirmed that providing inmates with sanitary and safe living conditions is a constitutional requirement.

**Explanation of Why Plaintiff Is Entitled to Relief**

93. The provision of clean and safe drinking water is a basic human necessity and a constitutional requirement under the Eighth Amendment. Polluted water that is visibly yellow or brown, emits an odor resembling human waste, and causes serious health issues constitutes cruel and unusual punishment. Defendants' failure to provide clean water, despite knowing the risks and experiencing the unsafe conditions themselves, demonstrates deliberate indifference to Plaintiff's health and safety.

94. The Fifth and Fourteenth Amendments further protect Plaintiff's substantive due process rights to humane treatment while in custody. Defendants' conduct shocks the conscience and violates these constitutional protections by depriving Plaintiff of access to clean and safe drinking water.

## *Defendants*

95. The following individuals are directly responsible for implementing, enforcing, or allowing these unconstitutional practices, policies, and customs:

96. Chief Deputy Warden Lionel Pierre, Major Roger Lucas, Latonya S. Ray, Bruce Levalley, Scott M. Richmond, Brad Osenga, Emanuel Rose, Keith Mohler, Adams Raymond, James Heckard

## *Relief Sought*

97. As a direct and proximate result of Defendants' actions and omissions, Plaintiff respectfully requests the following relief:

1. **Compensatory Damages**: For the physical pain, emotional distress, and mental anguish caused by Defendants' deliberate indifference.

2. **Punitive Damages**: To punish Defendants for their willful and malicious disregard for Plaintiff's constitutional rights and deter similar future misconduct.

3. **Injunctive Relief**:

   a. To ensure that DCP immediately provides clean and safe drinking water to all inmates.

48

    b. To establish a policy requiring alternative water sources (e.g., bottled water) when the prison water supply is unsafe.

4. **Reasonable Attorney Fees and Costs**: Pursuant to 42 U.S.C. § 1988.

98. Plaintiff asserts that Defendants' actions and omissions constitute a violation of his constitutional rights under the Fifth, Eighth, and Fourteenth Amendments and entitle him to the relief sought.

## Count 7: Violation of 42 U.S.C. § 1983

### Inadequate Food

### Fifth, Eighth, and Fourteenth Amendments

99. Plaintiff, Imhotep Muhammad, alleges that Defendants violated his constitutional rights under the Fifth, Eighth, and Fourteenth Amendments by subjecting him to inadequate and unsafe food while incarcerated at Dauphin County Prison (DCP).

**Factual Allegations**

1. **Adequate Food Is a Basic Human Need:**

a. Adequate food is essential to maintain health and is protected by the Eighth and Fourteenth Amendments. While prison food does not need to be gourmet, it must meet basic nutritional and safety standards. (*Hoptowit v. Ray*, 682 F.2d 1237).

b. Food that is spoiled, uncooked, contaminated, or tampered with falls below constitutional standards. (*Keenan v. Hall*, 83 F.3d 1083).

2. **Unsafe and Inadequate Food at DCP**:

a. DCP serves food that is frequently uncooked, raw, or spoiled, including:

    i. Uncooked meats, biscuits, cakes, vegetables, and eggs.

    ii. Spoiled meals, old food, moldy bread, and biscuits.

    iii. Food contaminated with hair, as well as food exposed to mice and roaches.

b. These conditions are unsanitary and inadequate to maintain health, violating basic human needs and constitutional protections.

3. **Food Tampering and Contamination**:

a. The food served to inmates is frequently tampered with, and instances of contamination by mice and roaches are common.

Despite this, prison officials knowingly serve such food to inmates, including Plaintiff.

4. **Impact on Plaintiff:**

   a. Since Plaintiff's arrival at DCP, he has been subjected to the inadequate food described above.

   b. The inadequate and unsanitary food has caused physical harm, emotional distress, and mental anguish, depriving Plaintiff of his basic human rights.

5. **Deliberate Indifference by Defendants:**

   a. Defendants have shown deliberate indifference to the safety and well-being of inmates, including Plaintiff, by knowingly allowing these conditions to persist and failing to take corrective action.

**Relevant Case Law Supporting Plaintiff's Claim**

- *Hoptowit v. Ray*, 682 F.2d 1237: Held that prisons must provide adequate food that meets basic nutritional and health standards.

- *Keenan v. Hall*, 83 F.3d 1083: Found that unsanitary food conditions, such as serving contaminated or spoiled food, violate the Eighth Amendment's prohibition against cruel and unusual punishment.

***Defendants***

100. The following individuals are directly responsible for implementing, enforcing, or allowing these unconstitutional practices, policies, and customs:

- Chief Deputy Warden Lionel Pierre

- Major Roger Lucas

- Latonya S. Ray

- Bruce Levalley

- Scott M. Richmond

- Brad Osenga

- Emanuel Rose

- Keith Mohler

- Adams Raymond

- James Heckard

***Explanation of Why Plaintiff Is Entitled to Relief***

101. The provision of adequate, safe, and sanitary food is a constitutional requirement under the Eighth Amendment. DCP's failure to provide such food violates Plaintiff's right to be free from cruel and unusual punishment. Moreover,

the Fifth and Fourteenth Amendments protect Plaintiff's substantive due process rights to humane treatment while in custody.

102. Defendants' actions and omissions, including the failure to provide safe and adequate food, demonstrate deliberate indifference to Plaintiff's health and safety. These practices shock the conscience and amount to a violation of Plaintiff's constitutional rights.

### *Relief Sought*

103. As a direct and proximate result of Defendants' actions and omissions, Plaintiff respectfully requests the following relief:

1. **Compensatory Damages**: For the physical harm, emotional distress, and mental anguish caused by Defendants' deliberate indifference.

2. **Punitive Damages**: To punish Defendants for their willful and malicious disregard for Plaintiff's constitutional rights and deter similar future misconduct.

3. **Injunctive Relief**:

    a. To ensure that DCP immediately provides safe, adequate, and sanitary food to all inmates.

    b. To implement policies and procedures to prevent tampering and contamination of food.

4. **Reasonable Attorney Fees and Costs**: Pursuant to 42 U.S.C. § 1988.

104. Plaintiff asserts that Defendants' actions and omissions constitute a violation of his constitutional rights under the Fifth, Eighth, and Fourteenth Amendments and entitle him to the relief sought.

### Count 8: Violation of 42 U.S.C. § 1983

### Exposure to Human Waste and Sewage Issues

### Fifth, Eighth, and Fourteenth Amendments

105. Plaintiff, Imhotep Muhammad, alleges that Defendants violated his constitutional rights under the Fifth, Eighth, and Fourteenth Amendments by subjecting him to unsanitary conditions involving human waste and inadequate plumbing at Dauphin County Prison (DCP).

***Factual Allegations***

1. **Exposure to Human Waste Due to Shared Plumbing**:

54

    a. The toilet system at DCP is shared among cells. As a result, when other inmates use the bathroom and flush, their waste often appears in Plaintiff's toilet. (*Despain v. Uphoff*, 264 F.3d 965).

    b. Plaintiff's toilet regularly fills with other inmates' feces 5–7 times daily.

    c. On **September 7, 2023**, Plaintiff's toilet flooded, causing feces to spill onto the cell floor.

2. **Human Waste in Common Areas**:

    a. Plaintiff has encountered feces on the floor, walls, and benches in the showers. These unsanitary conditions expose inmates, including Plaintiff, to significant health risks.

3. **Maintenance Delays and Indifference**:

    a. Plaintiff endured these conditions for over **25 ½ months** before any meaningful action was taken by prison maintenance.

    b. Maintenance staff eventually removed flushed debris but failed to resolve the underlying issue. Waste continues to back up into Plaintiff's toilet.

4. **Health and Living Conditions**:

    a. Plaintiff was forced to eat three meals daily near a toilet frequently contaminated with human waste.

    b. Prolonged exposure to human waste has caused Plaintiff significant emotional distress, mental anguish, and physical discomfort.

***Defendants***

106. The following individuals knowingly permitted or failed to rectify these unconstitutional conditions, demonstrating deliberate indifference:

- Chief Deputy Warden Lionel Pierre

- Major Roger Lucas

- Latonya S. Ray

- Bruce Levalley

- Scott M. Richmond

- Brad Osenga

- Emanuel Rose

- Keith Mohler

- Adams Raymond

- James Heckard

***Relevant Case Law Supporting Plaintiff's Claim***

- *Despain v. Uphoff*, 264 F.3d 965: Established that prolonged exposure to human waste constitutes cruel and unusual punishment under the Eighth Amendment.
- *McCord v. Maggio*, 927 F.2d 844: Held that failure to address unsanitary conditions involving human waste violates inmates' constitutional rights.

***Explanation of Why Plaintiff Is Entitled to Relief***

107. The Eighth Amendment prohibits cruel and unusual punishment, including subjecting inmates to inhumane and unsanitary living conditions. The failure to provide adequate plumbing and maintenance at DCP demonstrates deliberate indifference to Plaintiff's basic human needs.

Plaintiff's rights under the Fifth and Fourteenth Amendments were also violated, as the continued exposure to human waste deprived Plaintiff of substantive due process protections ensuring humane treatment while in custody.

108. Defendants' acts and omissions, including the failure to maintain functional plumbing and ensure sanitary conditions, directly contributed to Plaintiff's suffering and violated his constitutional rights.

57

*Relief Sought*

109. As a direct and proximate result of Defendants' actions and omissions, Plaintiff respectfully requests the following relief:

1. **Compensatory Damages**: For the physical harm, emotional distress, mental anguish, and degradation caused by Defendants' deliberate indifference.

2. **Punitive Damages**: To punish Defendants for their reckless disregard of Plaintiff's constitutional rights and deter similar future misconduct.

3. **Injunctive Relief**:

    a. Immediate repairs and upgrades to the plumbing system at DCP to prevent sewage backups.

    b. Implementation of policies to ensure proper maintenance and sanitation of inmate facilities.

4. **Reasonable Attorney Fees and Costs**: Pursuant to 42 U.S.C. § 1988.

110. Plaintiff asserts that Defendants' actions and omissions constitute a violation of his rights under the Fifth, Eighth, and Fourteenth Amendments, entitling him to the relief sought.

58

## Count 9: Violation of 42 U.S.C. § 1983

## Inadequate Medical Care

## Eighth and Fourteenth Amendments

111. Plaintiff, Imhotep Muhammad, alleges that Defendants violated his constitutional rights under the Eighth and Fourteenth Amendments by providing inadequate medical care and demonstrating deliberate indifference to his serious medical needs.

### *Factual Allegations*

1. **Initial Injury and Lack of Proper Treatment**:
   a. On **December 8, 2022,** Plaintiff sustained injuries that were blatantly disregarded by medical staff. A nurse on-site laughed at Plaintiff's injuries, failing to provide any meaningful medical care.

2. **Examples of Deliberate Indifference**:
   a. **December 23, 2022**: Plaintiff fell ill after drinking contaminated water. Medical staff ignored Plaintiff's condition for days despite clear symptoms of illness.

b. **January 9, 2023 (10:30 AM)**: Plaintiff requested pain medication for ongoing pain, but medical staff refused to provide any, with a nurse stating, "The prison has nothing for you. Have a nice day."

c. **February 15, 2023 (1:20 PM)**: Plaintiff informed a nurse that he was experiencing worsening headaches, pain, and dizziness. Although the nurse promised to call him down, Plaintiff was not seen for weeks and three days after the initial request.

d. **March 13, 2023 (1:25 PM)**: Medical staff walked past Plaintiff's cell, dismissing him by stating, "Medical has nothing for you."

e. **March 15, 2023 (12:43 PM)**: Medical staff failed to open Plaintiff's cell for pill call. Pill call was delayed or missed altogether on several occasions.

3. **Diagnosis of Kidney Damage**:

a. Plaintiff was diagnosed with kidney damage on **April 10, 2024**, by PrimeCare Medical staff. This diagnosis was confirmed by a second opinion from Harrisburg Hospital on **October 28, 2024 (4:50 PM)**.

b. The delay in diagnosis and treatment contributed to the worsening of Plaintiff's condition.

4. **Prolonged Denial of Adequate Medical Care**:

a. Over a span of 25 ½ months, Plaintiff was consistently denied proper medical attention, timely treatment, and access to necessary medications.

**Defendants**

112. The following individuals knowingly permitted or failed to address the inadequate medical care provided by prison staff, demonstrating deliberate indifference to Plaintiff's serious medical needs:

- Chief Deputy Warden Lionel Pierre

- Major Roger Lucas

- Latonya S. Ray

- Bruce Levalley

- Dr. Carl Hoffman

- Tykeisha Metz

**Relevant Case Law Supporting Plaintiff's Claim**

- *Estelle v. Gamble*, 429 U.S. 97 (1976): The deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, prohibited by the Eighth Amendment.

61

- *Nicholson v. Choctaw County*, 498 F. Supp. 295: Failure to provide reasonably adequate medical care violates an inmate's constitutional rights.

### Explanation of Why Plaintiff Is Entitled to Relief

113. The Eighth Amendment guarantees the right to adequate medical care for prisoners, prohibiting deliberate indifference to their serious medical needs. The consistent failure of medical staff to treat Plaintiff's injuries, illnesses, and pain demonstrates a violation of this constitutional right.

114. Under the Fourteenth Amendment, Plaintiff was entitled to substantive due process protections, which were violated by the prison's policies, practices, and customs that allowed for the denial of basic medical care.

115. Defendants' failure to investigate, provide timely treatment, or take necessary medical actions constitutes deliberate indifference, directly causing Plaintiff prolonged suffering, emotional distress, and permanent physical harm.

### Relief Sought

116. As a direct and proximate result of Defendants' actions and omissions, Plaintiff respectfully requests the following relief:

1. **Compensatory Damages**: For physical harm, emotional suffering, mental anguish, and long-term health complications caused by the inadequate medical care.

2. **Punitive Damages**: To punish Defendants for their deliberate indifference and deter similar misconduct in the future.

3. **Injunctive Relief**:

    a. Implementation of policies ensuring timely medical care for inmates.

    b. Mandatory training for medical staff on handling inmate health issues.

4. **Reasonable Attorney Fees and Costs**: Pursuant to 42 U.S.C. § 1988.

117. Plaintiff asserts that Defendants' actions and omissions violated his Eighth and Fourteenth Amendment rights, entitling him to the relief sought.

### Count 10: Violation of 42 U.S.C. § 1983

### Deliberate Indifference

### Eighth and Fourteenth Amendments

### *Definition of Deliberate Indifference*

118. Deliberate indifference occurs when an individual intentionally disregards a substantial risk of harm to another. In the prison context, it refers to a willful neglect of a prisoner's safety or medical needs despite being aware of the risks. It

surpasses mere negligence and requires actual knowledge of and disregard for an

excessive risk to inmate health or safety.

Examples include:

- Ignoring a prisoner's obvious poor health.
- Failing to investigate credible claims of health or safety concerns.
- Delaying or outright refusing to treat a prisoner's medical condition.
- Intentionally failing to follow prescribed medical orders.

***Factual Allegations***

2. **Conditions at Dauphin County Prison (DCP)**:

    a. Defendants, including Chief Deputy Warden Lionel Pierre, Major

    Roger Lucas, Latonya S. Ray, Bruce Levalley, and others, have long

    been aware of the unconstitutional conditions at DCP.

    b. The prison has been the subject of multiple public complaints, media

    reports, protests, and oversight visits from advocacy organizations

    such as the Prison Society. Despite this, no substantive action has

    been taken to remedy the systemic issues.

3. **Exposure of Plaintiff to Harmful Conditions**:

    a. Since Plaintiff's arrival at DCP, he has been subjected to:

        i. Dangerous environmental conditions.

      ii. Deprivation of basic human necessities such as access to clean water, sanitary facilities, and proper medical care.

      iii. Emotional, mental, and physical suffering caused by Defendants' continued failure to address these conditions.

4. **Defendants' Conduct**:

  a. The following Defendants have demonstrated deliberate indifference by ignoring clear evidence of unsafe and unconstitutional conditions:

    i. **Defendants**: Lionel Pierre, Major Roger Lucas, Latonya S. Ray, Bruce Levalley, Scott M. Richmond, Brad Osenga, Emanuel Rose, Robert Battalia, Tami Donovan, William Courtwright, Tyra Riehl, Reyes Yohanna, Collet Robertson, Nashaya Simmons, Aaron Ayala, Sean Carrig, Chrisandra Brandt, Patrick Elliott, Dustin Emerich, Brent Fox, Keith Mohler, Yona Pollock, Andrew Klahr, Tyler Hoffman, James Heckard, Cynthia Whiting, Tasia Kea, Adams Raymond.

  b. These individuals acted with intentional, willful, malicious, reckless, and callous disregard for Plaintiff's constitutional rights, perpetuating harmful practices, policies, and customs at DCP.

5. **Continued Harm to Plaintiff**:

    a. Plaintiff has endured suffering for 25 ½ months due to Defendants' actions and omissions, resulting in:

        i. Physical pain and harm.

        ii. Emotional and mental anguish.

        iii. Permanent damage to Plaintiff's health and well-being.

### Relevant Case Law

- *Farmer v. Brennan*, 511 U.S. 825 (1994): Prison officials exhibit deliberate indifference when they know of and disregard an excessive risk to inmate health or safety.

- *Wilson v. Seiter*, 501 U.S. 294 (1991): Conditions of confinement that amount to the unnecessary and wanton infliction of pain violate the Eighth Amendment.

- *Estelle v. Gamble*, 429 U.S. 97 (1976): Deliberate indifference to serious medical needs constitutes cruel and unusual punishment.

### Legal Basis for Relief

119. Defendants' deliberate indifference violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment and Fourteenth Amendment

right to substantive due process. By ignoring Plaintiff's basic needs and failing to remedy systemic issues at DCP, Defendants acted in a manner that was intentional, reckless, and malicious.

***Relief Sought***

Plaintiff respectfully requests the following relief:

1. **Compensatory Damages**: For physical injuries, emotional distress, mental anguish, and loss of quality of life caused by Defendants' deliberate indifference.

2. **Punitive Damages:** To punish Defendants for their egregious misconduct and deter future violations.

3. **Injunctive Relief:**

   a. Immediate reforms to DCP's policies, practices, and procedures to ensure safe and humane conditions of confinement.

   b. Appointment of an independent monitor to oversee compliance with constitutional standards.

4. **Reasonable Attorney Fees and Costs**: Pursuant to 42 U.S.C. § 1988.

### Conclusion

120. Defendants' deliberate indifference to Plaintiff's health and safety has caused significant harm, violating his constitutional rights under the Eighth and Fourteenth Amendments. Plaintiff seeks the above-stated relief to address these ongoing violations and ensure accountability.

## Count 11: Violation of 42 U.S.C. § 1983

## Exposure to Second-Hand Smoke

## Fifth, Eighth, and Fourteenth Amendments

### Legal Standard

121. Under the **Eighth Amendment** to the U.S. Constitution, incarcerated individuals have the right to be free from cruel and unusual punishment, which includes protection from conditions that pose a substantial risk of serious harm to their health. In *Helling v. McKinney*, 509 U.S. 25 (1993), the Supreme Court held that exposure to environmental tobacco smoke (ETS) can constitute cruel and unusual punishment if prison officials are deliberately indifferent to the risks it poses to inmate health. The **Fourteenth Amendment** extends this protection to pretrial detainees, ensuring they are not subjected to punitive or harmful conditions. The **Fifth Amendment** protects individuals from deprivation of life,

68

liberty, or property without due process of law, which includes freedom from

harmful conditions like second-hand smoke.

**Factual Allegations**

1. **Widespread Exposure to Environmental Tobacco Smoke (ETS):**

   a. Plaintiff, Imhotep, has been continuously exposed to second-hand

      smoke for 25 ½ months during his incarceration at Dauphin County

      Prison (DCP).

   b. The smoke originates from both cigarettes and illicit substances,

      including synthetic drugs such as K2 and fentanyl, which are openly

      smoked within the prison.

2. **Failure to Enforce No-Smoking Policies:**

   a. Despite policies that designate DCP as a smoke-free facility,

      Defendants have failed to enforce these policies, allowing smoking to

      be prevalent throughout the prison, particularly during the night.

   b. Inmates often smoke openly with the tacit or explicit approval of

      correctional officers, undermining the supposed smoke-free

      environment.

3. **Involvement of Staff in Contraband Smuggling:**

69

a. Many correctional officers and staff members facilitate the introduction of tobacco and illicit substances into the prison, exacerbating the problem of ETS and exposing inmates to health risks.

**4. Harm to Plaintiff's Health:**

a. Prolonged exposure to ETS has placed Plaintiff at significant risk of severe health conditions, including but not limited to:

    i. Lung cancer

    ii. Heart disease

    iii. Decreased lung capacity

    iv. Cerebrovascular disease

    v. Emphysema and heart attacks

b. Plaintiff has suffered substantial emotional, mental, and physical harm as a direct result of this exposure.

**5. Notable Incidents Highlighting the Problem:**

a. The issue of ETS has been widely publicized, including coverage by ABC News and reports of drug trafficking within DCP.

   b. A specific incident involving Correctional Officer Sharda Davis, who passed out and had a seizure due to excessive smoke exposure in blocks C and D, further highlights the severity of the ETS problem.

6. **Deliberate Indifference of Defendants:**

   a. Defendants, including Chief Deputy Warden Lionel Pierre, Major Roger Lucas, Latonya S. Ray, Bruce Levalley, and others, have acted with deliberate indifference by failing to address the pervasive ETS problem.

   b. Defendants' failure to act constitutes a callous disregard for Plaintiff's health and constitutional rights, subjecting him to an ongoing and substantial risk of harm.

### *Relevant Case Law*

- **Helling v. McKinney**, 509 U.S. 25 (1993): Exposure to ETS can constitute cruel and unusual punishment if it poses a substantial risk of harm to an inmate's health, and prison officials are deliberately indifferent to this risk.

- **Farmer v. Brennan**, 511 U.S. 825 (1994): Deliberate indifference requires actual knowledge of a substantial risk to an inmate's health and a failure to take reasonable steps to alleviate that risk.

***Legal Basis for Relief***

122. Defendants' actions and omissions constitute violations of Plaintiff's constitutional rights under the **Fifth, Eighth, and Fourteenth Amendments**:

1. **Failure to Enforce No-Smoking Policies**: Defendants have failed to enforce the prison's no-smoking policies, allowing the widespread exposure of Plaintiff to second-hand smoke.

2. **Facilitation of Tobacco and Illicit Substance Introduction**: Defendants have allowed or actively facilitated the introduction of tobacco and illicit substances, further endangering Plaintiff's health.

3. **Deliberate Indifference**: Despite being aware of the risks posed by second-hand smoke, Defendants have been deliberately indifferent to Plaintiff's health by failing to take action to prevent such exposure.

4. **Unconstitutional Conditions**: The continued exposure to second-hand smoke violates the Eighth and Fourteenth Amendments, causing Plaintiff significant harm.

***Why Plaintiff is Entitled to Relief***

123. Plaintiff is entitled to relief for the following reasons:

1. **Egregious Violations of Constitutional Rights**: Plaintiff's rights under the **Fifth**, **Eighth**, and **Fourteenth Amendments** have been egregiously violated. Exposure to second-hand smoke poses a serious health risk and constitutes cruel and unusual punishment, especially when prison officials have been deliberately indifferent to these risks.

2. **Deliberate Indifference and Inaction**: Defendants' failure to act despite their knowledge of the dangers of ETS, as well as their tacit approval and facilitation of smoking and contraband smuggling, constitutes deliberate indifference to Plaintiff's health and well-being.

3. **Physical and Mental Harm**: The exposure to second-hand smoke has caused Plaintiff substantial harm, including but not limited to the potential for chronic health conditions such as lung cancer, heart disease, and reduced lung capacity. The mental and emotional distress caused by these health concerns is compounded by the ongoing nature of this exposure.

4. **Failure to Address Complaints**: Despite Plaintiff's complaints and concerns, the Defendants have taken no meaningful action to remedy the situation, perpetuating the harmful conditions that violate Plaintiff's constitutional rights.

## *Relief Sought*

124. Plaintiff respectfully requests the following relief:

1. **Compensatory Damages**: For the physical, emotional, and mental harm caused by prolonged exposure to second-hand smoke.

2. **Punitive Damages**: To punish Defendants for their deliberate and malicious conduct and to deter similar future violations.

3. **Injunctive Relief**:

   a. Immediate enforcement of no-smoking policies within DCP.

   b. Increased monitoring and discipline of staff members involved in the smuggling of tobacco and illicit substances.

   c. Regular air quality testing and improvements to the prison's ventilation system to mitigate exposure to second-hand smoke.

4. **Reasonable Attorney Fees and Costs**: Pursuant to 42 U.S.C. § 1988, to cover the cost of bringing this action and enforcing Plaintiff's constitutional rights.

74

*Conclusion*

125. Plaintiff has been subjected to a harmful, unconstitutional environment at DCP due to the widespread exposure to second-hand smoke. This exposure violates Plaintiff's constitutional rights under the **Fifth, Eighth**, and **Fourteenth Amendments**. Plaintiff respectfully requests the above-stated relief to remedy these violations, ensure Plaintiff's health and safety, and hold Defendants accountable for their deliberate indifference.

## Count 12: Violation of 42 U.S.C. § 1983
## Discrimination Against Religious Practices
## First and Fourteenth Amendments

*Legal Standard*

126. The First Amendment to the United States Constitution guarantees the right of all individuals, including incarcerated persons, to freely practice their religion. The Fourteenth Amendment ensures that this right cannot be infringed by state action. Incarcerated individuals retain their constitutional rights unless prison officials demonstrate a legitimate penological interest that justifies restriction (*Turner v. Safley*, 482 U.S. 78, 1987). The U.S. Supreme Court has consistently held that a denial of religious services or access to religious materials violates the First

Amendment if it burdens an inmate's ability to practice their faith in a meaningful way (*Cruz v. Beto*, 405 U.S. 319, 1972; *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 1987).

### Factual Allegations

1. **Denial of Access to Religious Texts:**

   a. Defendant DCP has removed hardcopy Bibles and Qur'ans from the prison and made them available only on electronic tablets. This change has severely restricted Plaintiff's ability to engage with the sacred texts of his faith, as reading is limited by daily access restrictions on the tablet.

   b. Inmates who lose or damage their tablets are entirely deprived of the ability to access their religious texts, placing them in a position where they are unable to fully practice their religion.

2. **Inadequate Religious Services:**

   a. Christian inmates are only provided with limited services, including two ministers who must go cell to cell to speak with inmates. These services are often interrupted or canceled due to frequent and

76

excessive lockdowns, causing long periods—sometimes weeks or

months—without religious services.

b. Muslim inmates, including Plaintiff, are denied religious services

altogether, except for a brief observance during Ramadan. This

practice deprives them of the opportunity to engage in regular

prayer, worship, and religious fellowship.

3. **Hostile Religious Environment:**

a. Defendant Pastor Alfred Sloan, the DCP chaplain, imposes his

personal religious beliefs on inmates, often discrediting their faiths.

He has publicly mocked and belittled figures revered in Christianity

and Islam, including Jesus and Muhammad, and has preached false

doctrines to inmates.

b. Pastor Sloan has further obstructed religious services by preventing

outside ministers from entering the prison, especially when their

teachings contradicted his own beliefs.

4. **Discriminatory Treatment:**

a. Inmates, particularly those who follow the Nation of Islam and

Christianity, have been subjected to discriminatory treatment based

on their religious beliefs. These inmates are deprived of equal access

77

to religious materials and services when compared to other inmates who do not follow these faiths.

b. Plaintiff (Imhotep), who follows both Christian and Nation of Islam beliefs, has been discriminated against by prison staff's disregard for his religious rights and has been subjected to an environment hostile to his faith.

## *Legal Basis for Relief*

127. The actions and omissions of the Defendants constitute violations of Plaintiff's rights under the **First** and **Fourteenth Amendments** as follows:

1. **Violation of Religious Freedom:** Defendants' actions, including the removal of hardcopy religious texts, denial of regular religious services, and interference with religious practices, directly infringe upon Plaintiff's constitutional right to freely exercise his religion.

2. **Religious Discrimination:** The treatment of Plaintiff based on his faith, including differential treatment in the availability of religious resources and services, constitutes religious discrimination in violation of the First Amendment's guarantee of religious liberty.

3. **Hostile Religious Environment:** Defendants' actions, including Pastor Sloan's interference with religious teachings and services, have created a hostile environment in which Plaintiff's right to freely practice his religion is not respected, further violating his First and Fourteenth Amendment rights.

### *Why Plaintiff is Entitled to Relief*

128. Plaintiff is entitled to relief because:

1. **Clear Constitutional Violations:** Plaintiff has been deprived of his constitutional rights to freely practice his religion as guaranteed by the **First** and **Fourteenth Amendments**. These rights are fundamental, and their violation in the prison context has caused Plaintiff to suffer emotional, mental, spiritual, and physical distress.

2. **Deliberate Indifference:** The Defendants, including prison staff and officials, have acted with deliberate indifference to Plaintiff's religious rights by knowingly creating and maintaining policies and practices that restrict or deny access to religious texts and services. Their actions reflect a callous disregard for Plaintiff's constitutional protections.

3. **Impact on Plaintiff's Well-Being:** Denial of religious services and access to religious materials has caused Plaintiff severe emotional and mental

anguish. Religious practices are integral to Plaintiff's well-being, and depriving him of the ability to practice has significantly harmed him in both spiritual and psychological aspects.

4. **Failure to Address Grievances:** Despite Plaintiff's complaints and requests for access to religious materials and services, the Defendants have failed to take appropriate action to remedy the situation, exacerbating the harm suffered by Plaintiff.

### *Relief Sought*

129. Plaintiff respectfully requests the following relief:

1. **Compensatory Damages:** For the emotional, mental, spiritual, and physical harm caused by the violation of Plaintiff's religious rights.

2. **Punitive Damages:** To punish Defendants for their deliberate and malicious conduct and deter future violations of religious freedoms in the prison system.

3. **Injunctive Relief:**

   a. Immediate restoration of hardcopy Bibles and Qur'ans to all inmates in the prison.

    b. Provision of consistent, meaningful religious services for both Christian and Muslim inmates, including regular visits from ministers and appropriate accommodations for Jumu'ah prayers and other religious observances.

    c. Prohibition on religious interference by prison staff, including Pastor Alfred Sloan, and a mandate for the equal treatment of all religious beliefs within the prison system.

4. **Reasonable Attorney Fees and Costs**: Pursuant to 42 U.S.C. § 1988, to cover the cost of bringing this action and enforcing Plaintiff's constitutional rights.

*Conclusion*

130. Plaintiff's religious rights under the **First** and **Fourteenth Amendments** have been egregiously violated by the Defendants, causing him significant harm. Plaintiff is entitled to relief for the deprivation of his right to practice his religion freely and without discrimination. The relief requested is necessary to ensure that Plaintiff's rights are restored and that such violations do not continue to affect others incarcerated at DCP.

81

## VIII: Damages and Relief

131. Plaintiff, Imhotep Muhammad, hereby incorporates by reference all previous paragraphs (1) through (130) of this Complaint as though fully set forth herein.

132. As a direct result of the actions, omissions, and conduct carried out under the color of state law, including but not limited to the implementation of unconstitutional customs, policies, and practices, as well as the failure to address the unlawful prison conditions, Plaintiff has suffered severe physical, emotional, and psychological harm. These harms are the result of deliberate indifference, callous disregard, and intentional acts committed by Defendants. The injuries suffered by Plaintiff include but are not limited to:

- Humiliation, pain, and physical injury

- Economic loss and loss of liberty

- Excessive anxiety, PTSD, and memory loss

- Severe vertigo and permanent cognitive impairments

- Depression, mental stress, mood swings, and paranoia

- Difficulty sleeping, nightmares, mental and physical fatigue

- Emotional and physical anguish, mental deterioration, and decreased cognitive function

- Violations of Plaintiff's rights under the United States Constitution, including the First, Fifth, Eighth, and Fourteenth Amendments.

133. As a result of the actions and omissions by Defendants, Plaintiff seeks the following relief:

**Declaratory Relief**

134. Plaintiff respectfully requests a declaration that the actions and conduct of the Defendants violated 42 U.S.C. § 1983 and the First, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution due to the unconstitutional conditions at Dauphin County Prison (DCP).

**Compensatory Damages**

135. Plaintiff seeks compensatory damages in the amount of **$5,000,000.00** U.S. currency, or an equivalent value in any form of currency or assets (including but not limited to gold, silver, Bitcoin, or precious metals or stones) that hold the 136. equivalent value of the requested amount. The preferred form is U.S. Dollars. These damages are sought for the pain, suffering, and other harms caused by the unconstitutional conditions, including the ongoing physical, emotional, and psychological damage.

## Punitive Damages

137. Plaintiff seeks punitive damages in the amount of **$4,000,000.00** U.S. currency, or an equivalent value, to punish the Defendants for their willful, malicious, oppressive, and deliberate indifference. These damages are intended to deter Defendants and others from engaging in similar conduct in the future and to reflect the heinous and unjustifiable nature of the actions taken by the Defendants.

## Attorney's Fees and Costs

138. Plaintiff requests reasonable attorney's fees, litigation costs, and interest, as authorized by law under:

- **28 U.S.C. § 1920** (Taxation of Costs)

- **28 U.S.C. § 1961** (Interest on Judgments)

- **42 U.S.C. § 1988 et seq.** (Civil Rights Attorney's Fees)

- **42 U.S.C. § 1981** (Rights of Citizens) and to be free from all gag orders Pursuant to; The First Amendment.

- Any other statutory or legal provisions for the recovery of costs and fees.

84

### Litigation Costs and Interest

139. Plaintiff further demands reimbursement for all litigation expenses and interest on any awarded judgment, as provided by **28 U.S.C. § 1988 et seq.** and **42 U.S.C. § 1981**, or any other applicable legal standard.

### Other Relief

140. Plaintiff seeks any additional relief that the Court deems appropriate and just, in the interest of justice, and to fully compensate Plaintiff for the harms suffered and to deter similar misconduct by Defendants or other public officials.

## IX: Demand for Jury Trial

141. Plaintiff demands a trial by jury on all issues of fact and claims asserted in this Complaint.

85

***Claim for Violation of Liberty and Constitutional Rights***

142. Declaration: I, Imhotep Muhammad, declare under penalty of perjury that the above information is true and correct to the best of my knowledge, and I understand that false statements may result in the dismissal of my claims.

Respectfully submitted,

**Imhotep Muhammad**

Date: [Insert Date]

Email: Imhotep756@gmail.com

Phone No.: 717-562-6375