IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IMHOTEP A. MUHAMMAD, | : Civil No. 1:25-CV-1342 |
| Plaintiff, | : |
| v. | : (Judge Munley) |
| | : (Chief Magistrate Judge Bloom) |
| CHIEF DEPUTY WARDEN LIONEL PIERRE, et al., | : |
| Defendants. | : |

REPORT AND RECOMMENDATION

I. Introduction

This case comes before us for a screening review of the plaintiff's *pro se* civil complaint. The plaintiff, Imhotep Muhammad, was formerly incarcerated in the Dauphin County Prison ("DCP") in Harrisburg, Pennsylvania. The complaint lists numerous individual and institutional defendants, including the Chief Deputy Warden of the prison, Lionel Pierre; DCP; PrimeCare, the medical provider for the prison; and roughly 30 individual correctional or medical staff employed by PrimeCare or DCP. (*See* Doc. 1).

Muhammad alleges that in December of 2022, he suffered an anxiety attack in his cell at DCP after witnessing his cellmate have a

seizure, which caused him to pass out and suffer physical injuries. (Doc. 1 ¶ 41). He claims that although he was brought to medical almost immediately, the nurse mocked him and sent him back to his cell. (*Id.* ¶ 42). He informed a lieutenant, Defendant Rose, of his injuries, who he alleges interrogated him and insinuated he was lying about what occurred. (*Id.* ¶ 43). Muhammad claims that he was never properly treated for his injuries, which included a head injury, vertigo, concentration issues, and memory loss. (*Id.* ¶¶ 47-48). He also claims that around this time, he was denied proper dental care. (*Id.* ¶ 46). He asserts that DCP's and PrimeCare's failure to provide him with adequate care exacerbated his physical and psychological issues. (*Id.* ¶ 50).

The complaint also appears to challenge a host of conditions within the prison that the plaintiff believes violated his constitutional rights under the Eighth and Fourteenth Amendments. (Doc. 1).[1] These

---

[1] We note that the plaintiff's complaint is virtually identical to a prior complaint filed by the plaintiff as a purported class action. *See Muhammad, et al., v. Pierre, et al.*, Civ. No. 1:24-CV-2077. In that case, we concluded that the complaint failed to set forth allegations specific to the individual plaintiffs. *Id.* (Doc. 29). We concluded that the complaint failed to allege any specific conduct by the individual defendants, and instead, asserted the constitutional claims on a global scale. *Id.* Accordingly, we recommended the complaint in that case be dismissed.

conditions include prolonged isolation, inadequate periods of recreation time, unsafe living conditions, inadequate and unsanitary food, pest infestations, an inadequate grievance system, inadequate medical care, and inadequate maintenance of the prison. (*Id.* at 16-19). Specifically, Muhammad claims that he was exposed to environmental hazards while incarcerated at DCP, including black mold, human waste, dead pests, and fungus, which he asserts violated his right to a safe and healthy living environment. (*Id.* ¶¶ 56-58). He further asserts that he was diagnosed by PrimeCare staff with kidney damage, which he alleges was caused by exposure to black mold. (*Id.* ¶ 60, 111). Muhammad also contends that while at DCP, he was exposed to pests and rodent droppings, which he claims potentially exposed him to various diseases. (*Id.* ¶ 65). Muhammad repeats these allegations later in the complaint, alleging generally that he was exposed to unclean and unsanitary conditions within the prison that had the potential to cause him health issues constituting deliberate indifference and cruel and unusual punishment. (*Id.* ¶¶ 87-88).

---

*Id.* The district court adopted our recommendation and dismissed the matter on July 16, 2025. *Id.* (Doc. 38).

Muhammad further alleges that he was subject to periods of prolonged isolation, *i.e.*, 23 hours of cell confinement, and denied outdoor recreation time, which caused him physical and mental harm. (Doc. 1 ¶¶ 73, 80). He also claims that his cell contained polluted drinking water that made him sick; that he was subjected to contaminated or uncooked food, as well as second-hand smoke; and that the inadequate plumbing at DCP caused him to be exposed to human waste and sewage. (*Id.* ¶¶ 92, 99, 105, 121). Finally, Muhammad alleges that he was subjected to religious discrimination when he was denied access to certain religious texts, denied religious services, and experienced hostility from the prison pastor. (*Id.* ¶ 126). As relief, Muhammad requests nine million dollars in compensatory and punitive damages. (*Id.* ¶¶ 136-37).

Along with the complaint, Muhammad filed a motion for leave to proceed *in forma pauperis* ("IFP"). (Docs. 1, 2). After consideration, we will recommend that the plaintiff's motion for IFP be conditionally granted, but that this complaint be dismissed.

## II. Discussion

### A. Screening of *Pro Se* Complaints – Standard of Review

We have a statutory obligation to preliminarily review *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). We review such complaints to determine whether there are frivolous or malicious claims, or if the complaint fails to state a claim upon which relief may be granted. *Id.* This statutory preliminary screening mirrors review under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this legal benchmark, under federal pleading standards a plaintiff is required to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In determining whether a complaint states a claim for relief under this pleading standard, a court must accept the factual allegations in the complaint as true, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and accept "all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-

movant." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court is not required to accept legal conclusions or "a formulaic recitation of the elements of a cause of action." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

> As the Third Circuit Court of Appeals has aptly summarized:
>
> [A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips*, 515 F.3d at 234–35. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Iqbal*, 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

Generally, when considering a motion to dismiss, a court relies on the complaint and its attached exhibits, as well as matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). A court can also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Additionally, if the complaint relies on the contents of a document not physically attached to the complaint but whose authenticity is not in dispute, the court may consider such document in its determination. *See Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on any other part of the record when deciding a motion to dismiss. *Jordan*, 20 F.3d at 1261.

Finally, when reviewing a *pro se* complaint, we are reminded that such complaints are to be construed liberally, "so 'as to do substantial justice.'" *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) (quoting Fed. R. Civ. P. 8(f)). We must apply the relevant law even if the *pro se* plaintiff does not mention it by name. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citing *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002)).

## B. This Complaint Should be Dismissed.

After review, we conclude that this complaint violates Rule 8 of the Federal Rules of Civil Procedure and should be dismissed. Rule 8 dictates that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). It is well established that "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Fowler*, 578 F.3d at 211 (citations omitted). A complaint must contain "more than unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.* (citing *Twombly*, 550 U.S. at 555).

Here, the complaint fails to adequately allege any conduct specific to the named defendants. While the complaint names dozens of prison and medical officials, the prison itself, and PrimeCare in the caption, many of the counts list roughly ten individual defendants, as well as "the entire Captain and Lieutenant division" at DCP, as having committed the alleged constitutional violations. (*See e.g.*, Doc. 1 ¶ 55). Some counts simply name all defendants as having committed the alleged violations

without alleging any conduct specific to a defendant that is allegedly unlawful. (*See e.g., id.* ¶¶ 80, 84-85).

It is well established that in an action brought pursuant to 42 U.S.C. § 1983, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs[.]" *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). However, the complaint appears to assert the alleged constitutional violations against the defendants on a global scale, asserting generally that all the defendants are in some way responsible for the myriad wrongdoings alleged in the complaint. This is simply insufficient to meet the requirement that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To the extent the complaint can be said to state a direct claim against Lieutenant Rose, the only defendant seemingly named in connection with specific allegations (*see* Doc. 1 ¶¶ 43-44), such a claim fails as a matter of law. Muhammad alleges that after the nurse sent him back to his cell after his anxiety attack, Lieutenant Rose had a correctional officer document Muhammad's injuries but questioned Muhammad and insinuated that he was lying about the incident. (*Id.* ¶

43). Muhammad alleges that Rose then spread rumors about him around the prison despite his knowledge that Muhammad was telling the truth. (*Id.* ¶ 44). We read these allegations as asserting a deliberate indifference claim against Lieutenant Rose under the Eighth Amendment.

The Eighth Amendment protects inmates from "cruel and unusual punishment." U.S. Const. amend. XIII.  Prison officials have a duty to provide inmates with "adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).  To be liable for an Eighth Amendment violation, prison officials must have "a sufficiently culpable state of mind," *Farmer*, 511 U.S. at 834, which, in the prison context, is one of "'deliberate indifference' to inmate health and safety." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001) (citation omitted).

In the medical context, an inmate alleging an Eighth Amendment violation must demonstrate that prison officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).  Accordingly, an inmate asserting a claim of deliberate

indifference must establish that he had a serious medical need, and that prison officials, by affirmative acts or omissions, were deliberately indifferent to that serious medical need. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference in this context can be shown by a failure to provide care, the delay of medical care for non-medical reasons, or denial of reasonable requests for treatment. *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993). However, mere disagreement over a course of treatment does not amount to deliberate indifference. *James v. Pa. Dep't of Corr.*, 230 F. App'x 195, 197 (3d Cir. 2007). Further, non-medical correctional staff cannot be deemed to be deliberately indifferent "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).

Here, Muhammad merely alleges that Lieutenant Rose observed his injuries, including a swollen face and bleeding in his mouth, and returned Muhammad to his cell. (Doc. 1 ¶¶ 43-44). But Muhammad also alleges that prior to speaking with Rose, he was taken to medical and was observed by a nurse. (*Id.*). While he subsequently asserts that he made further requests to be seen by medical that he claims were ignored,

11

he does not allege that these requests were made to Rose. (*Id.* ¶ 46). Accordingly, based on these allegations, we cannot conclude that Rose, a non-medical correctional officer, was deliberately indifferent to Muhammad's medical needs when he returned him to his cell after Muhammad was seen by medical.

Finally, it appears that Muhammad may be attempting to bring a *Monell* claim against the institutional defendants, DCP and PrimeCare, alleging that his injuries were the result of a custom or policy of the institutional defendants to deny inmates adequate medical care and to disregard the conditions of the prison. A municipal entity may be liable for a constitutional violation under § 1983 if the violation was a direct result of the entity's policy, custom, or practice. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 695 (1978). However, an entity may not be held liable "solely because injuries were inflicted by its agents or employees." *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007). Rather, a plaintiff must demonstrate a "direct causal link" between the alleged constitutional violation and the municipal policy or custom. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). Importantly, a municipal entity "may not be held liable for constitutional

torts under § 1983 on a vicarious liability theory rooted in *respondeat superior*[.]" *Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 237 (3d Cir. 2013) (citation omitted).

In this case, while Muhammad asserts vague allegations that his harm was caused by either DCP's or PrimeCare's policies, his complaint essentially seeks to hold these entities liable for the actions of their employees under a theory of *respondeat superior*. This is simply insufficient to state a claim for *Monell* liability against these institutional defendants, particularly in this case where the plaintiff fails to identify any conduct undertaken by any specific defendant.

Accordingly, for the reasons set forth above, this complaint should be dismissed. However, given that the plaintiff is proceeding *pro se*, we recommend that this complaint be dismissed without prejudice to the plaintiff filing an amended complaint to remedy the deficiencies we have identified. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors*, 482 F.3d 247, 253 (3d Cir. 2007); *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).

III. <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the motion for leave to proceed *in forma pauperis* be conditionally GRANTED, but that the complaint be DISMISSED WITHOUT PREJUDICE to the plaintiff endeavoring to correct the defects cited in this report, provided that the plaintiff acts within 21 days of any dismissal order.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge

may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 13th day of August 2025.

*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge
